**MSG GROUP, INC., d/b/a Center for Dispute Resolution, Petitioner**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2006.

Decided July 7, 2006.

for work under Section 401(d)(1) of the Law, which is the Section on which the Board

relied.

William K. Pelosi, Philadelphia, for petitioner.

Matthew D. Stauffer, Harrisburg, for respondent.

Kelly M. Ochreiter, Kingston, for intervenor, Federal Hearings and Appeals Services, Inc.

BEFORE: McGINLEY, Judge,
SMITH–RIBNER, Judge, and
FRIEDMAN, Judge.

OPINION BY Judge FRIEDMAN.

MSG Group, Inc., d/b/a Center for Dispute Resolution (CDR),[1] petitions for re-

view of the December 2, 2005, final determination of Glenn E. Williams (Director), Director, Bureau of Administrative Services, Department of Public Welfare (DPW). The Director denied the bid protest filed by CDR pursuant to section 1711.1(a) of the Commonwealth Procurement Code (Procurement Code),[2] in which CDR challenged DPW's handling of the solicitation of bids from vendors for a contract to provide services (the service contract) for DPW's Bureau of Hearings and Appeals (BHA).

On or about August 22, 2005, DPW's Procurement Office, on behalf of BHA, posted a request for quotes (RFQ) on the Department of General Services (DGS) website, seeking bids from vendors interested in obtaining the service contract. CDR had been in contact with DPW previously to discuss the work encompassed in the service contract, and, on two occasions prior to the issuance of the RFQ, Michael L. Steinberg, President of CDR, wrote to BHA to express interest in performing that work. BHA responded by letter sent to the return address set forth on Steinberg's correspondence (CDR's correct address) telling Steinberg that an RFQ would be posted on the DGS website prior to November 2005, when the old service contract with Federal Hearings and Appeals, Inc. (Federal) was due to expire, and that a bid package would be sent to CDR that same day.

Once the RFQ was posted, DPW's Procurement Office mailed a bid packet to CDR *using the address listed for CDR on*

---

1. CDR is a Pennsylvania corporation with its principal place of business at 101 East 8th Avenue, Suite 104, Conshohocken, Pa. 19428.

2. Section 1711.1(a) of the Procurement Code provides, in relevant part, as follows:

(a) **Right to Protest.**—A bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in connection with the solicitation or award of a contract, ... may protest to the head of the purchasing agency in writing.
62 Pa.C.S. § 1711.1(a).

*the Commonwealth's vendor master list.*[3] However, at the time of the mailing, CDR had not updated the list to reflect its current address, and, on September 6, 2005, the bid packet was returned to the Procurement Office as undeliverable. CDR has been registered on the vendor master list since 2002, and, at the time of service contract solicitation, CDR knew that its address on the vendor master list was incorrect.[4]

After the bid packet was returned, the Procurement Office attempted to find another address for CDR. First, the Procurement Office consulted the online Yellow Pages under CDR's corporate name (MSG Group) to determine a correct address and found the same outdated address that appeared in the vendor master list. The Procurement Office also called the telephone number listed for MSG Group in the Yellow Pages but found that the number had been disconnected. (R.R. at 31a.) The bid opening for the RFQ occurred on September 16, 2005, and CDR did not submit a bid in response to the solicitation for the service contract. When Steinberg subsequently phoned to inquire when the bid packet would be ready, he learned that the bidding already was closed.

On October 4, 2005, at the earliest, CDR submitted its bid protest, alleging, *inter alia,* that the solicitation of bids was flawed because: CDR informed DPW of its interest in bidding for the service contract before the RFQ was posted; DPW advised CDR that it would send out a bid packet as soon as the RFQ was posted on the DGS website; CDR never received a bid packet even though DPW had CDR's most recent contact information; and, therefore, CDR was improperly denied an opportunity to submit a bid. (R.R. at 11a–13a.) CDR asked that it be allowed to enter a late bid for the service contract and have it considered.[5]

By letter dated October 21, 2005, DPW's Procurement Office forwarded a copy of CDR's bid protest to BHA (the contracting office) and Federal.[6] The October 21 letter stated that BHA's "contracting officer" could submit a written response to the bid protest within fifteen days and that Federal, "as the bidder appearing to have a substantial and reasonable prospect of the Service Contract award," also could submit a response. The letter also stated that

---

3. DPW's Procurement Office is charged with processing invitations for bids, posting them on the DGS website and mailing bid packets to entities that request them. The vendor master list is on the official vendor registration website for the Commonwealth, and, as a condition for receipt of a contract award, bidders must be registered on this list. To register, or to change company information on file, vendors must either visit the website or call the vendor management unit. (R.R. at 23a.)

4. CDR indicated that it intended to update its address on the vendor master list at the time it submitted its bid for the service contract. (CDR's bid protest at 2, R.R. at 4a and 12a.)

5. CDR initially submitted the bid protest to DGS's Deputy Secretary for Procurement.

The DGS Deputy Secretary received CDR's bid protest on October 5, 2005, and that same day, he sent Steinberg a fax informing him that the bid protest should have been sent to the head of DPW, the purchasing agency for the service contract, and that the bid protest had been forwarded accordingly. (R.R. at 1a–2a, 17a.) After receiving this fax, Steinberg sent the bid protest to the Office of the Secretary of DPW; the bid protest was date stamped as having been received by DPW on October 6, 2005. (R.R. at 9a–10a.)

6. There is no explanation offered for the fifteen-day delay in forwarding CDR's bid protest to DPW's Procurement Office and nothing to explain why the forwarding letter stated that the bid protest was filed on October 17, 2005, rather than October 6, 2005. (R.R. at 26a.)

any responses would be forwarded to CDR, who would be given an opportunity to reply within ten days of the response of the contracting officer. (R.R. at 26a.) Federal sent a response on October 24, 2005,[7] (R.R. at 27a–28a), and the Assistant Counsel for DPW, Matthew Stauffer, submitted a response on behalf of BHA on November 2, 2005, (R.R. at 29a–32a). CDR filed a reply to Stauffer's response on November 14, 2005.[8] (R.R. at 33a–38a.)

On December 2, 2005, the Director issued a final determination denying CDR's bid protest. The Director first determined that the bid protest was untimely pursuant to section 1711.1(b) of the Procurement Code, 62 Pa.C.S. § 1711.1(b). The Director also considered and rejected CDR's two procedural arguments. Finally, the Director addressed the merits of the Bid Protest and determined that DPW's solicitation for bids was neither contrary to law nor improper. (R.R. at 39a–44a, CDR's brief at Exhibit A.) CDR now petitions this court for review.[9]

▌ Preliminarily, DPW contends that the bid protest should be dismissed because CDR waived its right to protest the solicitation of bids for the service contract pursuant to section 1711.1(b) of the Procurement Code, 62 Pa.C.S. § 1711.1(b). We agree.

Section 1711.1(b) of the Procurement Code, which contains the time limitations for filing a bid protest, provides:

If the protestant is a bidder or offeror or a prospective contractor, the protest shall be filed with the head of the purchasing agency within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have known of the facts giving rise to the protest except that in no event may the protest be filed later than seven days after the date the contract was awarded. *If the protestant is a prospective bidder or offeror, a protest shall be filed with the head of the purchasing agency prior to the bid opening time or the proposal receipt date. If a bidder or offeror, a prospective bidder or offeror or a prospective contractor fails to file a protest or files an untimely protest, the bidder or offeror, the prospective bidder or offeror or the prospective contractor shall be deemed to have waived its right to protest the solicitation or award of the contract in any forum. Untimely filed protests shall be disregarded by the purchasing agency.*

62 Pa.C.S. § 1711.1(b) (emphasis added). Based on this statutory mandate, the Director held that CDR's bid protest was untimely because CDR, a prospective bidder, failed to file its bid protest by September 16, 2005, the bid closing date. Id.; *Cummins v. Department of Transportation,* 877 A.2d 550 (Pa.Cmwlth.2005) (finding bid protest was untimely); *Common Sense Adoption Services v. Department of Public Welfare,* 799 A.2d 225 (Pa.Cmwlth. 2002) (finding certain issues were waived

---

7. CDR contends that it was never sent a copy of Federal's response and, therefore, was denied an opportunity to reply to it. (CDR's brief at 11.)

8. In the reply, CDR raised two additional procedural issues which the Director ultimately rejected. Because we decide the case on the timeliness issue, we need not address the matter further.

9. The Procurement Code sets forth the scope and standard of review in an appeal from a determination denying a bid protest. Section 1711.1(i) provides, "The court shall hear the appeal, without a jury, on the record of determination certified by the purchasing agency. The court shall affirm the determination of the purchasing agency unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law." 62 Pa.C.S. § 1711.1(i).

by the protesting party since they were not raised in a timely manner).

However, CDR argues that dismissal of the bid protest as untimely based on the above emphasized language creates a due process violation both in light of DPW's specific actions here and, more generally, with respect to any prospective bidder whose protest goes to a lack of notice denying it the opportunity to bid.

CDR argues that DPW has waived the statutory time limitation because DPW did not follow the Procurement Code's directive and ignore CDR's bid protest as untimely but, instead, solicited responses to and a reply in support of the bid protest, rendered a determination on the merits and advised CDR of its appellate rights. CDR further asserts that DPW should be estopped from asserting the statute of limitations defense because DPW's own actions prevented CDR from submitting a timely bid or bid protest; specifically, DPW opened and closed the bidding process without providing CDR with a bid packet as promised.[10]

However, CDR cites no authority for the proposition that DPW's failure to immediately dismiss CDR's bid protest bars DPW from subsequently asserting that the bid protest is untimely. Moreover, CDR ignores the fact that, as an aggrieved prospective bidder, any rights it has to protest the bid solicitation are derived solely from the Procurement Code. The waiver of sovereign immunity provided to aggrieved bidders under the Procurement Code is expressly limited to the bid protest process provided for therein,[11] including the short time frames given to individuals aggrieved by the solicitation or award of public contracts to seek administrative redress. *See* section 1711.1($l$) of the Procurement Code, 62 Pa.C.S. § 1711.1($l$) (stating that provisions relating to administrative law and procedure do not apply to a bidder's or prospective bidder's protest of the solicitation or award of a public contract). Thus, although DPW did not initially ignore CDR's bid protest, the Director correctly held that CDR's bid protest is untimely pursuant to the statutory mandate set forth in 62 Pa.C.S. § 1711.1(b).

---

**10.** In making this argument, CDR relies on *Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979), for the proposition that the Commonwealth is estopped from relying on the statute of limitations to defend against a cause of action where the Commonwealth itself caused the party to delay. In *UEC*, the Commonwealth entered into a contract with a contractor, had the contractor perform under the contract and admitted its obligation to pay for the work performed. Nevertheless, while continually reassuring the contractor that payment would be made, the Commonwealth did not pay, and the time for the contractor to pursue a cause of action expired. Our supreme court held that the Commonwealth could not avoid an admitted contract obligation by saying "too bad, you shouldn't have believed us when we told you we'd pay you." Id. at 514, 397 A.2d at 784. *UEC* is easily distinguished from the present case, most relevantly because DPW owed no contractual obligations to CDR. *See National Construction Services, Inc. v. Philadelphia Re-*

*gional Port Authority*, 789 A.2d 306 (Pa. Cmwlth.2001) (holding that a solicitation for bids is not an offer to contract but only an invitation for parties to submit bids and does not confer rights on the bidder).

**11.** Section 1702 of the Procurement Code provides in relevant part:

(a) General Rule.—The General Assembly under section 11 of Article I of the Constitution of Pennsylvania reaffirms sovereign immunity, and, except as otherwise provided in this chapter, no provision of this part shall constitute a waiver of sovereign immunity....

(b) Exception.—The General Assembly under section 11 of Article I of the Constitution of Pennsylvania does hereby waive sovereign immunity as a bar to claims against Commonwealth agencies brought in accordance with sections 1711.1 ... *but only to the extent set forth in this chapter.*

62 Pa.C.S. § 1702(b) (emphasis added).

■ In addition, the record does not support CDR's assertion that all delay in this case is the fault of DPW. To the contrary, CDR admits familiarity with the bidding process, including the use of the vendor master list, and CDR admits that it failed to keep its address on that list current. As noted by the Director, because vendors are in the best position to know this information, they bear the burden to make sure that the Procurement Office has the information necessary to provide vendors with requested bidding materials.[12] Attempting to provide CDR with the bid packet using its customary and accepted methods, the Procurement Office obtained CDR's address from the vendor master list and, when the packet was returned, employed other, albeit unsuccessful, means of obtaining the address.[13] Certainly, the Procurement Office was as entitled to the presumption that the vendor master list contained CDR's correct address as CDR was to the presumption that the Procurement Office would know that the address was incorrect. We conclude that, under these circumstances, DPW's failure to unearth CDR's correct address does not estop DPW from relying on the statute of limitations to defend against CDR's bid protest.

■ CDR also contends that it would be unconstitutional to apply the Procurement Code's time limitations to prospective bidders who lost the opportunity to bid due to a lack of notice and, thus, are forced to file a protest after the bid opening date. CDR maintains that this would deprive such individuals of a protected property interest, specifically, the taxpayer interest in preventing the improper award of a public contract,[14] without due process. CDR acknowledges that the Procurement Code is now the exclusive remedy for disappointed bidders, *Pennhurst Medical Group, P.C. v. Department of Public Welfare*, 796 A.2d 423 (Pa.Cmwlth.2002); *Direnzo Coal Company v. Department of General Services, Bureau of Purchases*, 779 A.2d 614 (Pa. Cmwlth.2001); nevertheless, CDR maintains that if CDR is not permitted this statutory remedy, the bid protest should be recast as a taxpayer complaint in equity under this court's original jurisdiction. *See On–Point Technology Systems, Inc. v. Department of Revenue*, 753 A.2d 911 (Pa. Cmwlth.2000).

However, we note that DPW complied with the statutory notice requirements of the Procurement Code by posting the RFQ and the bidding instructions on DGS's website. Under section 512(c) of the Procurement Code, an agency is required only to provide "adequate public notice" of its solicitation for sealed competitive bids by any one of several means, including electronic publication accessible to the general public. 62 Pa.C.S. § 512(c)(1). In this case, CDR was told that the RFQ would be posted on the DGS website, and because the RFQ was posted on August 22, 2005, CDR was able to

---

12. CDR hints at a conspiracy to prevent it from obtaining the bidding materials; however, the record contains no evidence of this, and, in fact, there is no reason to believe that CDR would not have received the bid packet if the vendor master list had contained CDR's updated address.

13. CDR contends that the Procurement Office could have easily discovered CDR's correct address (which, as evidenced by the prior communications, was already in DPW's files)

by searching under CDR's business name, by using the fax number listed in the vendor master file, by calling directory assistance or by looking the address up at msggroup.com. However, as stated, the burden to provide the needed address was on CDR, not DPW; thus, any failings on DPW's part are irrelevant.

14. *American Totalisator Co., Inc. v. Seligman*, 489 Pa. 568, 414 A.2d 1037 (1980).

directly request a copy of the bid package at any time prior to the bid closing date.

■ Moreover, as an aggrieved prospective bidder, CDR cannot avail itself of the right to proceed as a taxpayer in this court's original jurisdiction. Section 1711.1(*l* ) of the Procurement Code, 62 Pa. C.S. § 1711.1(*l* ); *Pennhurst* (holding that a protestant that is both a disappointed bidder and an aggrieved taxpayer cannot avail himself of both remedies; the legislature intended that all disappointed bidders, even those that also have taxpayer standing, must avail themselves of the exclusive administrative remedy set forth in the Procurement Code). CDR has failed to establish any protected interest outside the bid protest remedy provided by the Procurement Code, and CDR also has failed to show any due process violation caused by DPW's belated application of the time limitation imposed by the Procurement Code.

Accordingly, because the Director correctly determined that CDR's bid protest was untimely, we affirm the dismissal of CDR's bid protest on this basis.

*ORDER*

AND NOW, this 7th day of July, 2006, the final determination of the Department of Public Welfare, dated December 2, 2005, is hereby affirmed.