IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aetna Better Health of        :
Pennsylvania, Inc.,            :
         Petitioner       :
                            :
        v.              :
                            :
Pennsylvania Department   :
of Human Services,         :   No. 652 M.D. 2020
         Respondent    :   Argued:  October 18, 2021


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED:  November 17, 2021


Aetna Better Health of Pennsylvania, Inc. (Aetna) has filed a petition for review of a Final Determination by the Secretary of Human Services (Secretary)[1] of the Pennsylvania Department of Human Services (Department) denying Aetna's bid protests on Request for Applications 07-19 (RFA) relating to the Commonwealth's HealthChoices Medicaid (HealthChoices) Program. Alternatively, Aetna's petition seeks review in our original jurisdiction, requesting

---

[1] At Aetna's request, the Secretary of Human Services (Secretary) of the Department of Human Services (Department) appointed a designee, for purposes of the Final Determination, who had no connection with or previous knowledge of this matter.  That designee was Jonathan Rubin, Deputy Secretary of the Department's Office of Children, Youth and Families.  Pet. for Review, Ex. 1 (Final Determination) at 6-7 & 15.  For ease of reference, this opinion refers to the designee as the Secretary and the designee's Final Determination as that of the Secretary.

a declaratory judgment and mandamus relief regarding any debriefing issues the Secretary ruled were not proper grounds for bid protests. Several other applicants under the RFA have intervened in this matter. The Department and some of the intervenors have filed preliminary objections to Aetna's original jurisdiction claim. The parties have briefed and argued both the appellate issues and the preliminary objections, and both are presently ready for disposition. For the reasons discussed below, we sustain the preliminary objections in part, dismiss them in part as moot, and affirm the Secretary's Final Determination.

## I. Background

HealthChoices is a managed care program for Medicaid recipients. Managed care organizations (MCOs) administer the HealthChoices Program in five Pennsylvania zones – Northeast, Southeast, Lehigh-Capital, Northwest, and Southwest. The Department contracts with multiple MCOs to administer HealthChoices Program benefits and services in each zone. Aetna is one of those MCOs. It has provided administration by contract with the Department in two zones since 2010 and in all five zones since 2012.

### A. RFPs 06-15 and 06-15 (Reissued)

In September 2015, the Department issued Request for Proposals (RFP) 06-15 for new contracts for administration of the HealthChoices Program in all five zones. Aetna, which was already administering the program as an MCO, submitted proposals for all five zones. However, the Department did not select Aetna to negotiate for new contracts.

Aetna claims that in evaluating applications under RFP 06-15, the Department stated it applied what it called a "heritage factor" in evaluating the proposals by all applicants. *See Aetna Better Health of Pa., Inc. v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 351 M.D. 2016, filed July 19, 2016), slip op. at 4-5, 2016 Pa. Commw. Unpub. LEXIS 1120 at *4-5 (unreported). The Department applied the heritage factor to favor any existing applicant having at least a 25% market share of Medicaid participants, reasoning that the disruption likely to arise from cessation of such an applicant's services would outweigh some shortfall in the rest of the applicant's evaluation scores. *Id.* However, the Department did not disclose in the RFP that it would be applying the heritage factor as part of its evaluation process.

Aetna describes the heritage factor as a "secret criterion" used to deprive Aetna of new contracts and to favor other MCOs despite Aetna's higher proposal scores. Pet. for Review at 4, ¶ 13. Aetna therefore filed a bid protest. The Department responded by asserting that Aetna could not protest based on that issue. Aetna then filed a petition for review. This Court enjoined the RFP 06-15 procurement and ordered that if the Department chose to review Aetna's bid protest, that review should be by an independent hearing officer not employed by the Department and not connected to the RFP. *See Aetna Better Health*, slip op. at 32.

The Department then withdrew RFP 06-15 and reissued it as "RFP 06-15 (Reissued)." Aetna again submitted a proposal, and the Department again did not select Aetna for negotiations regarding a contract in any zone. Whether the Department again applied the heritage factor is unclear. However, Aetna claims the Department "secretly structured the evaluation criteria and formulas in a manner designed to achieve a predetermined result, to favor the very same MCOs that received contracts with the original RFP only through application of the [h]eritage

[f]actor." Pet. for Review at 5, ¶ 20. Aetna also alleges the Department "had secret discussions" with another MCO about modifying its bid proposal in order to pass the Department's readiness review procedure. *Id.* at 6, ¶ 22.

Aetna and other applicants filed bid protests to RFP 06-15 (Reissued), which the Department denied. This Court reversed the Department, concluding that discussions with MCOs about bid modifications and readiness review violated the RFP and the Commonwealth Procurement Code (Procurement Code)[2] because only the Department's designated Issuing Officer, Karen Kern (Kern), may engage in such discussions. *UnitedHealthcare of Pa., Inc. v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 790 C.D. 2017, filed Apr. 10, 2018), slip op. at 27, 2018 Pa. Commw. Unpub. LEXIS 212, at *31-32 (unreported).

## B. The RFA

In October 2019, the Department issued the RFA in a third attempt to seek new contracts regarding administration of the HealthChoices Program. Aetna submitted an application for all five zones. The Department did not select Aetna for negotiations in any zone. Aetna received the lowest score of all applicants, although its scores had been among the highest for RFP 06-15.

Aetna requested debriefing as permitted by Section I, Paragraph 25 of the RFA. *See* Reproduced Record (RR) 66a-67a (RFA at 15-16, ¶ I-25). The Department provided debriefing documents consisting of a redacted Selection Memorandum and another document setting forth some, but not all, of the Department's determinations concerning the strengths and weaknesses of Aetna's application. The Department refused to provide any other applicants' raw scores,

---

[2] 62 Pa. C.S. §§ 101-2311.

comparative analysis of the applicants, or information about other MCOs' applications. Allegedly departing from past practice, the Department also declined to provide an interactive debriefing conference. The Department did allow Aetna to submit written questions but had not answered them as of the date of filing of the petition for review. Aetna asserts that it needed answers to its questions in order to determine whether it had grounds for additional bid protests.

Aetna filed several bid protests regarding the RFA and later consolidated them. Aetna asserted the Department erred by failing to select Aetna as qualified, responsible, and capable of providing services in each zone. Aetna also claimed the Department violated the RFA by (1) changing its readiness review process to allow applicants to self-certify their readiness to perform contracts, (2) engaging in improper communications with other applicants concerning a proposal by UnitedHealthcare of Pennsylvania (United) for a regional council, (3) selecting UPMC for You, Inc. (UPMC) for negotiations although UPMC's application did not comply with the RFA's work stoppage provision,[3] and (4) providing inadequate debriefing. Aetna requested an evidentiary hearing on its bid protests, but the Secretary denied Aetna's request.

## C. The Final Determination

On December 4, 2020, the Secretary issued the Final Determination denying Aetna's bid protests. The Secretary concluded the Department's evaluation

---

[3] The draft contract in Appendix A to the RFA contained a provision that precluded a contracting MCO from including in its provider network any provider that had experienced a work stoppage in the past five years, unless the provider could produce an executed collective bargaining agreement (CBA) or labor peace agreement. Aetna alleged that a hospital in UPMC's provider network had experienced such a work stoppage. Aetna contended the draft contract provision in Appendix A to the RFA constituted a requirement that UPMC submit proof of a CBA or labor peace agreement as part of its application.

and selection were not clearly erroneous, arbitrary, capricious, contrary to law, or an abuse of discretion. Pet. for Review, Ex. 1 (Final Determination) at 7.

First, the Secretary rejected Aetna's assertion that the Department should have selected Aetna as qualified, responsible, and capable of providing services in each zone. The Secretary reasoned that even assuming Aetna to have the qualifications it asserted, Aetna failed to offer evidence that the selected applicants "were not more advantageous or more qualified." Final Determination at 7-8.

Next, the Secretary concluded Aetna failed to sustain its burden of establishing its claim that the Department violated the RFA by changing its readiness review process to allow applicants to self-certify their readiness to perform contracts. Final Determination at 8. The Secretary found Aetna's contention was speculative because Aetna merely asserted that United had been told the readiness review process "may" be bypassed in favor of self-attestations. *Id.*; Bid Protest 8/8/20, RR 121a-22a. Moreover, the Secretary observed that the RFA did not specify the method of readiness review the Department would use, so even if Aetna's claim about the statement made to United was true, the alleged change in the readiness review would not have violated the RFA. Final Determination at 9.

The Secretary likewise rejected Aetna's assertion that the Department engaged in improper communications with other applicants concerning United's proposal of a regional council. The Secretary found the communications at issue related to current contract issues, not to applications submitted under the RFA, so they were not improper or violative of the RFA. *Id.* at 10.

The Secretary concluded that Aetna had also failed to establish that UPMC's application did not comply with the work stoppage provision in the draft agreement at Appendix A of the RFA. Aetna contended UPMC's provider network

6

included a hospital that had experienced a work stoppage within the past five years, but UPMC failed to submit a signed CBA or labor peace agreement with its application, in violation of the RFA. The Secretary rejected this contention as untimely, but more importantly, found the work stoppage provision was not part of the RFA. Rather, because it was part of a sample contract attached in Appendix A to the RFA, it did not apply to all applicants or even to those selected for negotiations. It was subject to change, and moreover, even if it remained in the final contract, the requirement would apply only when a final agreement was signed. Final Determination at 11.

Additionally, the Secretary rejected Aetna's assertion that the Department's debriefing was inadequate. The Secretary opined that bid protests under the Procurement Code must relate to the solicitation or award of a contract, not to the manner of debriefing provided. Final Determination at 12. Nonetheless, the Secretary addressed the substance of Aetna's argument and found it without merit. The Secretary observed that the RFA expressly provided that the purpose of debriefing was to help an applicant understand some of the strengths and weaknesses of its application and that no information would be given comparing other applications. *Id.* Because the Department's debriefing provided information on some strengths and weaknesses of Aetna's application and the Department was not required to provide comparative information, the Secretary concluded the debriefing complied with the RFA. *Id.*

Finally, the Secretary concluded Aetna was not entitled to additional information it requested, such as additional scoring information concerning Aetna and the other applicants. *Id.* at 13. First, the Procurement Code provides no right to request documents or discovery. *Id.* (citing *UnitedHealthcare of Pa., Inc. v. Dep't*

7

*of Hum. Servs.*, 172 A.3d 98, 105 (Pa. Cmwlth. 2017) ("The Procurement Code does not provide protestants a right to production of documents or other discovery.")); *see also JPay, Inc. v. Dep't of Corr.*, 89 A.3d 756, 762 (Pa. Cmwlth. 2014) (Section 1711.1(d) of the Procurement Code, 62 Pa. C.S. § 1711.1(d), "does not . . . provide a protestant with an opportunity to discover documents but rather only provides that the contracting officer may submit a response to the protest and documents to support the response"; moreover, the agency is not required to provide the protestant with any of the documents discussed in the response). Further, the Secretary did not need to review any additional information in order to make a determination. In that regard, the Secretary explained that Aetna's request for an evidentiary hearing was refused because the existing record was sufficient to allow a decision and there were no "material" facts in dispute. Final Determination at 13-14.

### D. Aetna's Petition for Review

Aetna thereafter filed its petition for review in this Court. According to Aetna, the Secretary rejected Aetna's arguments in a conclusory fashion without addressing their substance. Further, the Secretary resolved disputes of fact without a hearing and without any evidentiary basis. Aetna posits that the Secretary applied a "double standard" by ruling Aetna's reliance on statements of other bidders to be "speculative" while finding the Department's reliance on such statements to be dispositive and conclusive. Pet. for Review at 9, ¶ 39.

Gateway Health Plan, Inc. (Gateway), Geisinger Health Plan, Inc. (Geisinger), Health Partners Plans (Health Partners), Pennsylvania Health & Wellness, Inc. (PHW), United, UPMC, and Vista Health Plan, Inc., AmeriHealth Caritas Health Plan, and Keystone Family Health Plan (collectively, Vista)

intervened. The Department, Geisinger, Health Partners, and UPMC filed preliminary objections to Aetna's original jurisdiction claims.[4] This Court directed the parties to brief both the appellate issues and the preliminary objections and ordered joint argument.

## II. Issues

## A. Appellate Jurisdiction

In its petition for review filed in our appellate jurisdiction, Aetna argues the Department deprived Aetna of meaningful bid protests by providing incomplete debriefing. In addition, the Secretary improperly disposed of disputed factual issues without an evidentiary hearing. On the merits of its bid protests, Aetna contends the Department engaged in improper communications with other MCOs, and the Secretary erred by finding the Department did not have such communication. Aetna asserts further that the Department improperly selected UPMC to negotiate for contracts although UPMC's application did not conform to RFA requirements. Aetna argues the Department also violated the RFA by departing from its past readiness review of applicants and allowing applicants to self-attest their readiness to perform contracts. Aetna asks this Court to order the Department to cancel the RFA and rescind any related notices of selection. Alternatively, Aetna asks this Court to remand this matter to the Department with a directive to vacate the Final Determination, provide proper debriefing, and allow Aetna to supplement its bid protests based on new information acquired in further debriefing.

---

[4] Gateway and United filed answers to the original jurisdiction claims, and Vista filed an answer with new matter. Those pleadings are not at issue here.

9

**B. Original Jurisdiction Petition and Preliminary Objections**

In the alternative, Aetna contends that even if the Secretary otherwise correctly found no grounds for Aetna's bid protests, the Department's incomplete debriefing conferred on Aetna a right to file an action in this Court's original jurisdiction. Aetna claims the Department violated Aetna's rights under the Procurement Code to a debriefing that would facilitate a meaningful review of Aetna's bid protests. Aetna seeks a declaration that the Department violated the Procurement Code and a writ of mandamus commanding the Department to comply with the Procurement Code.

As stated above, the Department, Geisinger, Health Partners, and UPMC filed preliminary objections to Aetna's original jurisdiction claims. The Department, joined by Geisinger, asserts that the Procurement Code is the mandatory and exclusive remedy for disappointed bidders and offerors, as well as prospective bidders and offerors; that any waiver of sovereign immunity relating to bid protests is limited to challenges provided in the Procurement Code; and that Procurement Code challenges lie solely in this Court's appellate, not original, jurisdiction. *See* 62 Pa. C.S. § 1711.1(*l*) ("This section shall be the exclusive procedure for protesting a solicitation or award of a contract by a bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in connection with the solicitation or award of a contract."). Health Partners and UPMC assert similar preliminary objections. UPMC adds that Aetna's original jurisdiction claims arise solely under the Procurement Code, but rights under the Procurement Code are expressly in this Court's appellate jurisdiction. Health Partners similarly argues that Aetna cannot assert both appellate and original jurisdiction claims on the same grounds.

10

Health Partners and UPMC also point out that Aetna has sought documents related to its bid protests by submitting document requests under the Right-to-Know Law (RTKL).[5]  Health Partners suggests that seeking the same documents in its original jurisdiction claim before this Court constitutes an improper collateral attack on the determination issued by the Office of Open Records[6] concerning the RTKL request.  UPMC similarly asserts that Aetna cannot merge the appeal of its RTKL proceeding with its bid protest litigation.

UPMC further objects that because the Final Determination addressed and rejected Aetna's debriefing complaints, mandamus will not lie.  In addition, there is no right to a specific form of debriefing conferred by statute.  Finally, UPMC posits that a petitioner cannot seek review in both this Court's appellate and original jurisdiction in one petition.

## III. Discussion
### A. Appellate Issues[7]
### 1. Debriefing

Aetna first asserts on appeal, as it argued in its original jurisdiction claim, that the Department's allegedly incomplete debriefing deprived Aetna of

---

[5] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[6] UPMC states that Aetna filed a separate appeal from the determination by the Office of Open Records, but that appeal was stricken as inoperative because reconsideration was granted. *See* Preliminary Objections of UPMC at 2 n.2.

[7] We will affirm the purchasing agency's determination unless the determination was arbitrary and capricious, an abuse of discretion, or contrary to law.  62 Pa. C.S. § 1711.1(i). An error of law occurs where an agency interprets its governing statutes, regulations, or orders contrary to their clear and plain meaning or fails to follow its own regulations and procedures. *See, e.g., The People's Nat. Gas Co. v. Pa. Pub. Util. Comm'n*, 542 A.2d 606, 608 (Pa. Cmwlth. 1988), *aff'd*, 567 A.2d 642 (Pa. 1989).

meaningful bid protests. Aetna insists the Department must provide additional debriefing. In that regard, Aetna cites *GTECH Corp. v. Department of Revenue*, 965 A.2d 1276, 1288 (Pa. Cmwlth. 2009) (agency cannot deny a bidder its right to a debriefing and provide such a right only "after the time has passed for a meaningful hearing"). Aetna further observes that the Department opposed Aetna's initial protest on the basis that Aetna had "not yet had its debriefing" and therefore could not show it should have been selected for negotiations. Pet. for Review at 13, ¶ 60. Aetna suggests that a meaningful debriefing requires access to information on all, not just some, of Aetna's strengths and weaknesses, as well as comparisons to other applicants. According to Aetna, past debriefings have provided MCOs with information leading to procurement nullifications.

The Procurement Code contains no debriefing requirement. *See generally* 62 Pa. C.S. §§ 101-2311. Aetna's entitlement to additional debriefing information therefore depends on the provisions of the RFA and the Commonwealth's Procurement Handbook. *See* RR 66a-67a (RFA at 15-16, ¶ I-25); Procurement Handbook, Pt. I, Ch. 6, § A, ¶ 14.[8] Contrary to Aetna's contention, we conclude that neither of these authorities supports Aetna's demand for additional debriefing.

### a. Debriefing Requirements of the RFA

A Commonwealth purchasing agency is bound by the express provisions of its RFP. *Seda-Cog Joint Rail Auth. v. Carload Express, Inc.*, 185 A.3d 1232, 1240 (Pa. Cmwlth. 2018), *aff'd*, 238 A.3d 1225 (Pa. 2020) (citing *Am. Totalisator Co. v. Seligman*, 414 A.2d 1037 (Pa. 1980)). Aetna contends the

---

[8] The Procurement Handbook can be found online at https://www.dgs.pa.gov/Materials-Services-Procurement/Procurement-Handbook/Pages/default.aspx (last visited Nov. 16, 2021).

Department's debriefing did not comply with the requirements of the RFA. We disagree.

The RFA contained a paragraph titled "Debriefing Conference" that provided:

> Upon notification of selections for negotiations, those Applicants whose applications were not selected will be given the opportunity to be debriefed. The purpose of the debriefing is to assist the Applicant in understanding *some* of the strengths and weaknesses of certain aspects of its application. The Department will schedule the debriefing at a mutually agreeable time. The Department *will not compare the Applicant with other Applicants* during the debriefing, other than the position of the Applicant's application in relation to all other Applicant applications. An Applicant's *exercise of the opportunity to be debriefed does not constitute nor toll the time for filing a protest* (see Section I-26 of this RFA).

RR 66a-67a (RFA at 15-16, ¶ I-25) (emphasis added). The provisions of this paragraph of the RFA are consistent with those of the Procurement Handbook discussed in the next subsection.

We discern no language in the "Debriefing Conference" provision of the RFA that would support Aetna's assertion that it is entitled to more debriefing than it has already received. Aetna acknowledges that the Department provided information concerning some of the strengths and weaknesses of its application. By the RFA's express terms, the Department's debriefing had to provide information only about *some*, *not all* strengths and weaknesses. Aetna's argument to the contrary has no support in the RFA. Similarly, the RFA does not entitle Aetna to comparative information concerning other applicants, in light of the RFA's express statement that the Department *would not compare applicants during the debriefing*. Finally, Aetna's complaint about the Department's purportedly improper delay in debriefing

13

is not consistent with the RFA's language, which stated only that the debriefing would be scheduled at a mutually convenient time and which further provided that an applicant's pursuit of a debriefing would not toll the deadline to file a bid protest.

Accordingly, we reject Aetna's assertion that the Department failed to comply with the RFA's debriefing requirements.

### b. Debriefing Requirements of the Procurement Handbook

Part I, Chapter 6, Section A, Paragraph 6 of the Procurement Handbook sets forth the Department's debriefing responsibilities. Procurement Handbook, Pt. I, Ch. 6, § A, ¶ 14. Aetna cites the Procurement Handbook's debriefing provision as support for its demand for additional debriefing. However, the Procurement Handbook, like the RFA, provides no right to the additional information Aetna seeks.

Aetna suggests the Department's delay in providing full debriefing should eliminate any timeliness issue regarding any of its bid protests. The Procurement Handbook, however, similar to the RFA, expressly states: "An offeror's exercise of the opportunity to be debriefed does not constitute nor toll the time for filing a protest." Procurement Handbook, Pt. I, Ch. 6, § A, ¶ 14(a). *Accord BosWell Pharmacy Servs., LLC v. Dep't of Corr.* (Pa. Cmwlth., No. 1532 C.D. 2008, filed Apr. 30, 2009), slip op. at 2, 2009 Pa. Commw. Unpub. LEXIS 216, at *2 (unreported)[9] (where delay occurred in obtaining debriefing hearing, disappointed bidder filed bid protest within seven days and later amended it).

---

[9] Unreported opinions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

14

Aetna also complains that rather than an interactive conference, it received only a reading of prepared debriefing materials and a copy of what was read. The Procurement Handbook, however, confers no right to an interactive conference. To the contrary, it explains: "The debriefing *should be written beforehand and read to the offeror* during the debriefing conference. . . . The issuing office may provide a copy of the debriefing notes that are read to the offeror." Procurement Handbook, Pt. I, Ch. 6, § A, ¶ 14(c) (emphasis added).

Further, Aetna complains that it was allowed only to submit questions in writing. However, the Procurement Handbook does not confer any right to ask questions verbally, or, in fact, at all; nor does it require the Department to answer any questions submitted to it. The Procurement Handbook states merely: "It is in the agency's best interest to record all questions asked and responses given during the conference." Procurement Handbook, Pt. I, Ch. 6, § A, ¶ 14(c). Requiring submission of questions in writing is a reasonable means of assuring that all questions and the Department's answers, if any, are memorialized.[10] The Department's interest in doing so is all the more obvious in light of Aetna's history of filing multiple bid protests concerning the evaluation process relating to the Department's two previous attempts to select MCOs for its upcoming new contracts to administer the HealthChoices Program. Those previous protests gave the Department reason to expect that it would likely be called on to explain and

---

[10] In that regard, Aetna complained at oral argument that the Department failed to include Aetna's written questions in the record, allegedly hampering Aetna's ability to support its case on appeal to this Court. However, the record on review of a governmental determination consists only of the determination to be reviewed, the findings or report on which the determination is based, and "the pleadings, evidence and proceedings before the government unit." Pa. R.A.P. 1951(a). Aetna has not contended that its written questions were part of the record before the Secretary. Moreover, Aetna presumably had possession of a copy of its own questions submitted to the Department and could have asked this Court to order the Department to include them in the record if the questions were important to Aetna's case on appeal. *See* Pa. R.A.P. 1951(b).

document its evaluation and selection process, including its post-selection debriefings.

Aetna also insists it should have access to comparative evaluation information concerning other applicants. The Procurement Handbook, like the RFA, provides to the contrary, expressly stating: "The debriefing *should not compare the [applicant] to any other [applicant]. . . .* At the discretion of the issuing office, the debriefing *may* point out key differences between the successful [applicant] and the [applicant] being debriefed." Procurement Handbook, Pt. I, Ch. 6, § A, ¶ 14(d) (emphasis added).

Finally, Aetna complains that the selection memorandum it received from the Department contained redactions. In that regard, the Procurement Handbook expressly states that on request, the Department shall provide "[t]he Recommendation for Contractor Selection memorandum, successful proposal and contract, *with any non-public information redacted . . . .*" Procurement Handbook, Pt. I, Ch. 6, § A, ¶ 14(e). Aetna does not assert that the redactions at issue shielded any public information from disclosure.[11]

In short, there is no support for any additional debriefing rights in the Procurement Code, the RFA, or the Procurement Handbook. We conclude that the Secretary properly found the Department complied with its debriefing requirements.

## 2. Communications with Applicants

Aetna next asserts that the Department engaged in improper communications with other MCOs, in violation of the RFA and Section 513(F) of the Procurement Code, 62 Pa. C.S. § 513(f). Specifically, the RFA provides that all

---

[11] To the extent Aetna may have asserted in its RTKL request that it was seeking public information, that request and any related legal or factual issues are not before us in this matter.

communications with applicants will be through Kern as the Department's designated Issuing Officer. RR 52a, 57a & 64a (RFA at 1, 6 & 13, §§ I-2, I-6 & I-20). Aetna alleges that other Department personnel met with United on May 6, 2020, and informed United that the Department was dropping its prior readiness review process and allowing applicants to self-attest to their readiness to perform under contracts with the Department. The Secretary, however, found the Department did not have such communication with United. Aetna contends this finding was improper in light of United's statement alleging such communication, as well as the presence of the topic on the meeting's agenda. Aetna also points out that the Department emailed United on June 8, 2020, to schedule a meeting concerning "regional collaborations," purportedly referring to a "regional council" idea United presented in its application; thus, Aetna reasons the email was an attempt to clarify United's application with regard to how it would implement the "regional council" idea. Pet. for Review at 18-19, ¶¶ 85-87. We disagree.

Contrary to Aetna's argument, the Secretary's rejection of this assertion was not arbitrary, capricious, contrary to law, or an abuse of discretion. The May 6, 2020, meeting agenda listed no discussion of the RFA readiness review process or any other subject related to the RFA. *See* Pet. for Review, Ex. 10. Rather, as the Secretary correctly found, the agenda items facially related only to current contract management issues. *Id.* The Secretary was not required to credit United's bare averment that the readiness review process was discussed.

Regarding the Department's email of June 8, 2020, requesting a meeting concerning "regional collaborations," the Secretary also determined that email referred to collaborations to be pursued under current contracts. Final Determination at 10. Moreover, the RFA expressly provided:

17

> All materials submitted with the application shall be considered the property of the Commonwealth . . . . The Commonwealth has the right to use any or all ideas not protected by intellectual property rights that are presented in any application regardless of whether the application becomes part of an agreement.

RR 63a (RFA at 12, § I-17.B). The Department was free to use United's regional council idea in the course of current contract management. Thus, the Secretary did not err in concluding that Aetna failed to demonstrate any improper communications by the Department.

### 3. Selection of Nonconforming Applicants

Next, Aetna argues the Department improperly selected UPMC for negotiations, because UPMC's application did not conform to the RFA's requirements. Aetna posits that the RFA required an applicant to submit a signed collective bargaining agreement (CBA) or labor peace agreement along with its application if there had been a work stoppage by any provider in the applicant's network during the past five years. Pet. for Review, Ex. 14 (RFA Appendix A at 114 § V-S). Aetna contends a work stoppage occurred at a hospital in UPMC's network of providers, and that UPMC did not submit a CBA or labor peace agreement for that provider.

The Secretary rejected this basis for Aetna's protest as untimely, which Aetna disputes by insisting there has been no showing that it was or should have been aware of the work stoppage earlier. *See* Final Determination at 11. More importantly, however, because the work stoppage issue was addressed in a sample agreement that was Appendix A to the RFA, the Secretary concluded it was not actually part of the RFA. *Id.*

18

Aetna suggests that the RFA expressly required each application to be based on the terms and conditions of the sample agreement in Appendix A. We agree with the Secretary that the RFA contained no such requirement. We recognize that the RFA expressly required each application to be submitted "on the basis of the terms and conditions set out in Appendix A," the sample agreement. Br. of Pet'r at 57 (emphasis omitted) (quoting RR 63a-64a (RFA at 43-44, § III-8)). However, Section I-4 of the RFA, "Type of Agreement," stated, in pertinent part, "Please see Appendix A for a *draft* Agreement"; the RFA did not state that Appendix A contained the required final form of the agreement to be signed by selected applicants. RR 55a (RFA at 4, § I-4) (emphasis added). Section I-11.B.1 of the RFA, "Technical Submittal," listed specific appendices that had to be completed, signed, and submitted with an application; the list included Appendices C, I, J, and L, but *not* Appendix A. RR 60a (RFA at 9, § I-11.B.1(b), (c) & (d)). Section I-23 of the RFA, "Applicant's Representations and Authorizations," likewise imposed no requirement that an applicant provide a signed CBA or labor peace agreement as part of its application submission. RR 65a (RFA at 14 § I-23). The Secretary explained:

> The requirement regarding work stoppages was not contained in the RFA itself, but was included in the draft HealthChoices Agreement, which was subject to change. The work stoppage provision was not considered as part of the evaluation, but was applicable only to MCOs who were selected after the Department concluded its evaluation. If the work stoppage requirement remains in the executed HealthChoices Agreements, an MCO cannot include a provider in its network that had a work stoppage unless the provider is or becomes a signatory to a [CBA] or labor peace agreement. As explained by UPMC, the work stoppage occurred at a hospital within UPMC's system, a separate entity from the MCO. UPMC Response to Second Protest, p. 6. Thus, UPMC was not required to

> enter into a [CBA] or labor peace agreement to be selected for negotiations.

Final Determination at 11. We agree with the Secretary's interpretation of the work stoppage provision of Appendix A to the RFA.

The Secretary also concluded the work stoppage provision did not apply because the hospital at issue was a separate legal entity from UPMC. Aetna counters that such separation is irrelevant because the hospital was still part of UPMC's provider network. Because we agree with the Secretary that the work stoppage provision was not triggered until a contract was signed, we need not address this argument by Aetna.

### 4. Self-Attestations of Readiness

Aetna observes that when a Commonwealth purchasing agency "fail[s] to abide by the terms of its own RFP, it lack[s] discretion to award a contract contrary to those terms, thus warranting judicial intervention." *Seda-Cog*, 185 A.3d at 1240 (citing *Am. Totalisator*, 414 A.2d at 1041). Aetna suggests that the Department violated the RFA by refraining from its traditional "readiness review" in favor of allowing self-attestations of readiness from applicants. Aetna asserts that the RFA required specific documentary submissions from applicants, stated the Department would use a combination of desk and onsite reviews of the required deliverables, and estimated the review process would last about six months. Aetna posits that these provisions in the RFA constituted affirmative representations that the Department would use its traditional readiness review. Aetna also argues that permitting self-attestations unfairly favored applicants with less experience. Pet. for Review at 17, ¶ 76. Aetna contends the Secretary applied a "double standard" by finding that Aetna's reliance on United's statements alleging a change to self-

20

attestations by the Department was speculative. Pet. for Review at 9, ¶ 39. We disagree.

The Secretary found Aetna did not sufficiently allege that the Department had actually stopped using its traditional readiness review. Final Determination at 8. The Final Determination quoted Aetna's bid protest, which averred only that the Department had told United there "may" be a change in the method of readiness review, and "[t]o the extent the Department is indeed making this change, it amounts to an impermissible re-wiring of the terms of the RFA." *Id.* (internal quotation marks omitted). The Secretary did not err in finding those equivocal statements inadequate to aver that the Department actually implemented such a change.

In addition, the Secretary found the RFA did not specify what type of readiness review the Department would use. Final Determination at 9. Therefore, even assuming the Department did change its method of readiness review, such a change would not have violated the RFA. *Id.* We agree with the Secretary that the RFA's terms did not specify a particular form of readiness review that the Department would apply. *See id.* at 8 (citing the RFA). Accordingly, we agree that the Department could alter its prior method or methods of readiness assessment without violating the RFA.

## 5. Evidentiary Hearing Requirement

Aetna asserts it raised the following material questions of fact: the occurrence and content of the alleged discussion between the Department and United on May 6, 2020, concerning the readiness review; the Department's related switch from its prior readiness review process to self-attestation; the origin of the concept

21

of regional councils in United's application; the Department's alleged disclosure of that concept to some of the other applicants; the date when Aetna knew or should have known of the work stoppage at one of UPMC's network provider hospitals; the alleged failure of UPMC to provide a signed CBA or labor peace agreement regarding that provider; and the provider's alleged status as a separate legal entity from UPMC, if material. Aetna contends the Secretary was required to hold an evidentiary hearing to dispose of disputed factual issues but failed to do so. We disagree that any evidentiary hearing was required.

First, Section 1711.1(e) of the Procurement Code provides: "The head of the purchasing agency or his designee shall review the protest and any response or reply and may request and *review such additional documents or information he deems necessary* to render a decision and *may, at his sole discretion, conduct a hearing. . . .*" 62 Pa. C.S. § 1711.1(e) (emphasis added). Section 1711.1(e) further directs the head of the purchasing agency to "provide to the protestant and the contracting officer a reasonable opportunity to *review and address* any additional documents or information . . . ," but it does not state that the agency must allow a protestant to address documents or other information by means of testimony at a hearing. *Id.*; *see also BosWell*, slip op. at 5 n.5, 2009 Pa. Commw. Unpub. LEXIS 216, at *6 n.5 (whether to hold a hearing is within the presiding officer's discretion; "[b]ecause a request for proposals and bids are submitted 'on paper,' the usual practice is that the bid protest be resolved without a hearing as a bid protest cannot be used to supplement a bidder's or offeror's proposal"). The Secretary concluded the existing record contained all the information required in order to render the Final Determination. We discern no abuse of discretion in that conclusion.

22

Further, although Aetna argued it should have been allowed to introduce evidence concerning disputed issues of fact, the Secretary evidently concluded those issues were not material. *Accord BosWell*, slip op. at 5 n.5, 2009 Pa. Commw. Unpub. LEXIS 216, at *6 n.5 (there is no abuse of discretion in declining to hold a hearing where the bid at issue is defective as a matter of law). We agree.

Regarding the alleged discussion of altering the readiness review process, as well as the alleged alteration itself, we have already concluded that any such alteration, if it occurred, would not have violated the RFA. Therefore, any factual disputes over whether the discussion and the alteration occurred were not material to the Final Determination.

Likewise, any disputes concerning the origin of the regional council concept and the Department's alleged disclosure of that concept to other applicants were not material, because the RFA expressly provided that all ideas included in any application belong to the Commonwealth and may be used for any purpose. In any event, the only record evidence of any discussion was the email suggesting a meeting to discuss regional collaborations. Aetna failed to produce any evidence that the Department's disclosure, if any, of the concept was related to applications under the RFA as opposed to management of existing MCO contracts. Aetna's bare averment was insufficient to raise an issue of material fact.

The date when Aetna knew or should have known of the purported work stoppage at a hospital in UPMC's provider network, UPMC's alleged failure to submit a signed CBA or labor peace agreement with its application, and the separate legal status of the hospital provider that suffered the work stoppage are similarly immaterial. As discussed above, no CBA or labor peace agreement had to

23

be submitted with UPMC's application; that requirement will arise, if at all, only when UPMC actually signs an agreement based on its selection under the RFA. Thus, it does not matter whether Aetna's bid protest on that issue was timely, because it was without merit in any event; and it does not matter whether the hospital provider is a legally separate entity from UPMC, because no signed CBA or labor peace agreement is yet required.

For all of the reasons discussed above, we conclude the Secretary's Final Determination was not arbitrary, capricious, or contrary to law, or an abuse of discretion. Accordingly, we affirm the Final Determination.

### B. Preliminary Objections[12]

In its alternate claim invoking this Court's original jurisdiction, Aetna contends the Department improperly failed to provide an adequate debriefing. Aetna claims the Department violated Aetna's rights under the Procurement Code to a debriefing that would facilitate a meaningful review of Aetna's bid protests. Aetna seeks a declaration that the Department violated the Procurement Code and a writ of mandamus commanding the Department to comply with the Procurement Code.

The Department, joined by Geisinger, preliminarily objects that the Procurement Code is the mandatory and exclusive remedy for disappointed bidders and offerors, as well as prospective bidders and offerors; that Procurement Code

---

[12] In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and all inferences reasonably deduced from those allegations. *GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276, 1285 (Pa. Cmwlth. 2009) (citing *Stanton-Negley Drug Co. v. Pa. Dep't of Pub. Welfare*, 927 A.2d 671, 673 (Pa. Cmwlth. 2007), *aff'd*, 962 A.2d 670 (Pa. 2009)). We need not accept as true conclusions of law, unwarranted inferences from pleaded facts, argumentative allegations, or expressions of opinion. *GTECH*, 965 A.2d at 1285 (citing *Stanton-Negley*, 927 A.2d at 673). In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *GTECH*, 965 A.2d at 1285 (citing *Stanton-Negley*, 927 A.2d at 673).

challenges lie solely in this Court's appellate, not original, jurisdiction; and that any waiver of sovereign immunity relating to bid protests is limited to challenges provided in the Procurement Code. Health Partners and UPMC assert similar preliminary objections.

Generally, a bid protest under the Procurement Code is the mandatory and exclusive remedy for disappointed bidders and offerors, prospective bidders and offerors, and prospective contractors to challenge the solicitation or award of a contract.[13] *Stanton-Negley Drug Co. v. Pa. Dep't of Pub. Welfare*, 927 A.2d 671, 673 (Pa. Cmwlth. 2007); *MSG Grp., Inc. v. Dep't of Pub. Welfare*, 902 A.2d 613, 617 (Pa. Cmwlth. 2006). Procurement Code challenges lie in this Court's appellate, not original, jurisdiction. *See* 62 Pa .C.S. §§ 1711.1(g), (*l*); *Stanton-Negley*, 927 A.2d at 673 (this Court lacks original jurisdiction over claims that could be raised under the Procurement Code); *see also Fast Enters., LLC v. Dep't of Gen. Servs.*, 13 A.3d 566, 568 (Pa. Cmwlth. 2011); *Pennhurst Med. Grp. v. Dep't of Pub. Welfare*, 796 A.2d 423, 426 (Pa. Cmwlth. 2002).

Our exercise of original jurisdiction in *Aetna Better Health* is distinguishable. That case involved an emergency application for special relief made necessary by the Department's refusal to acknowledge the applicability of the Procurement Code and its provided remedies. *See id.*, slip op. at 1. Here, the Secretary addressed the substance of Aetna's debriefing argument in the Final Determination and thus applied the remedy provided in the Procurement Code.

*GTECH* is similarly distinguishable. There, the Department failed to comply with the Procurement Code's express bid protest procedures when it did not act on a bid protest and did not impose the automatic stay of the procurement

---

[13] Aetna acknowledges that in *GTECH*, 965 A.2d at 1288, this Court rejected an argument that denial of debriefing was not a proper ground for a bid protest. *See* Br. of Pet'r at 17.

25

process. *See* 62 Pa. C.S. § 1711.1; *GTECH*, 965 A.2d at 1280. This Court opined, in *dictum*, that equity would fashion a remedy in our original jurisdiction where the Procurement Code itself did not provide a mechanism to seek relief where an agency failed to comply with the statute's bid protest procedure. *GTECH*, 965 A.2d at 1288-89. Here, by contrast, Aetna has failed to plead facts establishing a violation of the Procurement Code, which contains no debriefing requirement. Moreover, Aetna did receive a debriefing and has not pointed to anything in the Procurement Code that would require the Department to provide any more information than it already has. Accordingly, the original jurisdiction remedy discussed in *GTECH* has no application to this case.

Moreover, the Procurement Code preserves sovereign immunity except as expressly waived. 62 Pa. C.S. §§ 1702, 1711.1. Waiver of sovereign immunity is limited to the bid protest process provided in the Procurement Code. 62 Pa C.S. § 1702; *see also MSG Grp., Inc.*, 902 A.2d at 617. As discussed above, we review bid protest determinations in our appellate jurisdiction. The Department contends, therefore, that Aetna has pleaded no claim for relief that can be granted in our original jurisdiction.[14] We agree.

For these reasons, we sustain the preliminary objections challenging this Court's original jurisdiction over the petition for review. Health Partners and UPMC also assert additional preliminary objections. Because the Department's preliminary objections are dispositive of Aetna's original jurisdiction claim, we dismiss the remaining preliminary objections as moot.

---

[14] Health Partners also incorporated this sovereign immunity argument in its preliminary objections.

26

## IV. Conclusion

For the reasons discussed above, the Secretary's Final Determination is affirmed. The preliminary objections asserting that this Court lacks original jurisdiction over Aetna's claim are sustained. The remaining preliminary objections are dismissed as moot.

_____
CHRISTINE FIZZANO CANNON, Judge

Judges Cohn Jubelirer, Leavitt, and Crompton did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aetna Better Health of
Pennsylvania, Inc.,
        Petitioner

       v.

Pennsylvania Department
of Human Services,
        Respondent

:
:
:
:
:
:
:
:
:
:   No. 652 M.D. 2020
:

# O R D E R

AND NOW, this 17th day of November, 2021, the preliminary objections of the Pennsylvania Department of Human Services (Department) and intervenors Geisinger Health Plan, Inc., Health Partners Plans, Vista Health Plan, Inc., AmeriHealth Caritas Health Plan, and Keystone Family Health Plan to the Petition for Review filed by Aetna Better Health of Pennsylvania, Inc. (Aetna), which objections assert that this Court lacks jurisdiction over Aetna's original jurisdiction claim included in the Petition for Review, are SUSTAINED. The remaining preliminary objections are DISMISSED as moot.

Regarding the appellate issues raised in the Petition for Review, the Department's Final Determination on Aetna's bid protests is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge